# Thompson *v.* The State.

## *Indictment for Rape.*

1. *Rape; change of venue.*—The fact that one accused of rape is a stranger, a member of a United States colored regiment, the members of which had committed so many various crimes while it was quartered in the community where the rape was committed, until a deep-seated prejudice had become fixed in the minds of the people against the entire regiment, that there had been made threats to mob the accused, and he had

[Thompson v. The State.]

been published as "the villain who committed the deed," and
that the prosecutrix was a white woman and a resident of the
county and had friends and relatives living therein, are not .
sufficient to authorize a change of venue.

2. *Jury law; statute providing for drawing of jury a general and
not a special law.*—The act approved February 28, 1887, (Acts
of 1886-87, p. 151), "to more effectually secure competent and
well qualified jurors in the several counties of this State," is
a general and not a local or special law, notwithstanding the
exclusion of some counties from its operation; and its several
provisions being embodied in the Code of 1896, were re-en-
acted by the adoption of said Code; and being, therefore, *in
pari materia,* must be construed together.

3. *Organization of jury; failure to state on lists of jurors their
occupation, does not authorize quashing of venire.*—Under the
provisions of section 4997 of the Code, no objection will be
sustained to a venire for a petit jury, except for fraud in
drawing and summoning the jurors; and, therefore, a failure
on the part of the jury commissioners making the list of
names drawn for the jury, to state opposite the names, the
occupation of each of said jurors, as provided by section 4982
of the Code, is no ground for quashing the venire; such pro-
vision being directory merely.

4. *Organization of grand jury; motion to quash indictment.*—Un-
der the statute (Cr. Code, § 5269), an indictment can not be
quashed upon any ground going to the formation of the grand
jury, except that the jurors were not drawn in the presence
of the officers designated by law; and the fact that the grand
jurors and the petit jurors were drawn at the same time, and
from the number so drawn, such persons as were considered
by the jury commissioners best fitted to serve on the grand
jury were selected as such grand jurors, is not ground for
quashing the indictment preferred by such grand jury.

5. *Rape; admisibility of testimony.*—While in a trial under an in-
dictment for rape, the statement made by the husband of the
woman assaulted to a friend immediately upon the discovery
of the outrage, in which he asked for advice, and the further
statement by the friend, in which he advised him to wait until
morning, are inadmissible as having been made in the ab-
sence of the defendant, the admission of such testimony is
error without injury.

6. *Same; same.*—On a trial under an indictment for rape, the testi-
mony of a witness that on the morning after the commission
of the alleged offense, while he was talking with the woman
assaulted, he saw the defendant passing the house, and upon

[Thompson v. The State.]

inquiry the prosecutrix stated that he was the guilty party, is inadmissible; such conversation having been had between the witness and the prosecutrix in the absence of the defendant, and having a tendency to identify the defendant as the one guilty of an assault, which was an important inquiry in the prosecution.

7. *Same; charge to the jury.*—On a trial under an indictment for rape, a charge which instructs the jury that if they "believe from the evidence that the witness, Callie King, did not give the alarm to her neighbors after the alleged rapist left her for four or five hours, this is a circumstance to which they can look to see if she was in truth assaulted," is argumentative and properly refused.

8. *Same; same.*—In such a case, a charge given at the request of the State, which instructs the jury that if they "are satisfied beyond a reasonable doubt from all the evidence of the defendant's guilt, they owe it to the community to find him guilty," correctly states the law, and though such charge is argumentative, the giving of it is not cause for the reversal of the judgment.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The defendant, Alfred Thompson, was indicted, tried and convicted for the rape of one Callie King, and was sentenced to the penitentiary for life.

The defendant filed his motion for a change of venue, assigning as grounds for said motion that "he could not get a fair trial in said county, for the reason that he is charged with a most heinous crime; that the prosecuting witnesses reside in said county, and that the defendant is a stranger in said county; and that he has been informed and so believes that efforts have been made at different times to raise a mob for the purpose of taking the life of the defendant, without giving him an opportunity to be heard before a lawful jury." To this motion the State demurred, on the ground that it sets up no sufficient reason for granting the defendant a change of venue. This demurrer was sustained, and thereupon the defendant filed another motion for a change of venue, assigning as grounds for said motion that the defendant was a negro and a stranger in said county, while the prosecutrix was a resident of said county and had a num-

[Thompson v. The State.]

ber of friends and relatives therein; that the defendant had been published in the newspapers of said county "as the villian who committed the deed" and also as "the brutal negro who assaulted a respectable white woman;" and further that the daily newspapers in the town from time to time gave out articles entreating the people not to resort to mob violence, but to let the law take its course. The State demurred to this motion, on the ground that it set forth no sufficient ground for the change of venue. This demurrer was sustained and the defendant duly excepted. Thereupon the defendant amended his motion by adding thereto by averments "that the defendant was a private in the Tenth Cavalry Regiment (colored) of the United States Army, and while with said regiment during a period of two or three months next prior to the commission of said offense and in the community where the same is alleged to have been committed, many members of said regiment conducted themselves so disorderly and offensively towards both civilians and other soldiers in said community, and committing various crimes, until a deep seated prejudice has been fixed in the minds of the people against said entire regiment, including the defendant, and a general condemnation of same now prevails throughout the county until the trial of defendant can not be entered into in said county with a fair presumption of innocence." A demurrer upon same grounds as those interposed to the other motions was sustained to this motion as last amended, and to this ruling the defendant duly excepted.

The defendant then moved to quash the special venire of the petit jurors drawn for the trial of said cause, upon the ground that the jury commissioners had failed to comply with the plain mandates of the law, in that they omitted placing upon the lists and slips drawn by them when filling the jury box and selecting the jury, the occupation of said jurors when known to them. The State demurred to this motion, the court sustained the demurrer, and disallowed said motion. The defendant also moved the court to quash the indictment upon the ground that the grand jury that preferred the

same was not drawn as required by law, in that, 1st, the jury commissioners did not place on the lists prepared, from which names were taken to fill the jury box, the occupation, when known, of each person, as required by law. 2d. The jury commissioners when they began to fill the jury box, destroyed all the names that were in the box at that time and at the time the grand jury was drawn, the commissioners had not completed their work of filling said box. 3d. The jury commissioners drew more than 21 names for grand jurors, and from that list selected the names from which the grand jury was made up. 4th. The grand and petit jurors were drawn at one and the same time, and the jury commissioners determined which persons so drawn should serve on the grand jury and which should serve on the petit jury. The State demurred to this motion, which demurrer was sustained, and said motion was overruled and disallowed.

The State introduced Callie King, the person assaulted, who testified to the commission of the offense charged, and that the defendant, to accomplish his purpose, levelled a pistol at the witness and choked her. This witness further testified that after the commission of the deed, she woke up a little negro girl, who was sleeping in the room with her, and locked themselves up in the kitchen until her husband's return early in the morning, after the commission of the deed, which was between 9 and 11 o'clock the night before, and that upon her husband's return, she told him all that had been done. It was also shown by the testimony that a man by the name of Walker lived in a house situated within about 10 feet from the house occupied by the prosecutrix.

Upon the introduction of the husband of the person assaulted, as a witness, he testified that he was a hack driver and was out the night of the commission of the offense until about 2 o'clock; that when he returned home he found his wife locked in the kitchen and that upon her telling him that she had been outraged, he told her that she was dreaming, and that she must be mistaken, and upon her insisting that she was not, he went to the house of one Barney Mehan, and asked him what

to do about it; that said Mehan told him "to wait until morning;" and that he then went back home. The defendant moved to exclude the testimony of the witness as to what Mehan said to him; on the ground that the defendant was not present. The court overruled the motion, and to this ruling the defendant duly excepted.

Upon Barney Mehan being introduced as a witness for the State, he testified as follows: "Mr. King came to my house some time before day crying, and told me what had been done to his wife and asked my advice. I said we will attend to the matter in the morning." The defendant moved to exclude the testimony of this witness as to the conversation of Mr. King, on the ground that the defendant was not present. The court overruled the motion, and the defendant duly excepted. This witness testified that on the next morning he went to the house of Mrs. King, and upon her telling him what had been done, he asked her who it was, and she said that she thought it was the defendant; that while at her house, about 10 o'clock, he, the witness, looked out of the window and saw the defendant passing; that thereupon he asked Mrs. King "If he was the man, and she said she thought he was the man." The defendant moved to exclude the testimony of this witness as to the conversation between him and Mrs. King, upon the ground that the defendant was not shown to have been present. The court overruled the motion, and the defendant duly excepted.

The testimony for the defendant tended to show that he was not at the house of Mrs. King on the night the offense was alleged to have been committed; three witnesses for the defendant testifying that he was at another place.

At the request of the State, the court gave to the jury the following written charge: "If the jury are satisfied beyond a reasonable doubt from all the evidence of the defendant's guilt, they owe it to the community to find him guilty." The defendant duly excepted to the giving of this charge, and also separately excepted to the court's refusal to give each of the following charges requested by him: (1.) "If the jury believe the evidence, they will

2

find the defendant not guilty." (2.) "If the jury do not believe beyond a reasonable doubt that Callie King was dreaming or laboring under an hallucination or illness at the time she swears the defendant assaulted her, then they must acquit the defendant." (3.) "If the jury think it probable that Mrs. King was laboring under an hallucination, this is a just foundation for a reasonable doubt and therefore of the defendant's acquittal." (4.) "If the jury believe from the evidence that the witness Callie King did not give the alarm to her neighbors after the alleged rapist left her for four or five hours, this is a circumstance to which they can look to see if she was in truth assaulted." (5.) "If the jury do not believe beyond all reaonable doubt that the witness Callie King was not dreaming or laboring under an hallucination or illusion at the time she swears the assault took place, then they must acquit the defendant."

R. E. SMITH and DAVID A. GRAYSON, for appellant. The court erred in sustaining the demurrers to the defendant's motion for a change of venue. The facts stated in such motion were sufficient to authorize a change of venue.—*Birdsong v. State,* 47 Ala. 68; *Seams v. State,* 84 Ala. 410; *Murphy v. State,* 45 Ala. 32; *Posey v. State,* 73 Ala. 494.

The adoption of the Code and the provisions in regard to juries and how they should be selected and drawn does not repeal the act in question, which is a local one. The passage of a general law does not repeal a local or special law.—*Faust v. Huntsville,* 83 Ala. 279; *Davis v. State,* 68 Ala. 64; *Maxwell v. State,* 89 Ala. 150; *Steele v. State,* 111 Ala. 33; *Johnston v. State,* 102 Ala. 21.

The court erred in refusing to exclude the evidence of the husband of prosecutrix with a third person, the defendant not being present .—*Chilton v. State,* 105 Ala. 98.

The court erred in giving the charge requested by the State.—*Cooper v. State,* 88 Ala. 107.

CHAS. G. BROWN, Attorney-General, for the State. The facts set out in the motion for the change of venue did not authorize the granting of such motion.—*Jackson v. State*, 104 Ala. 1; *Hawes v. State*, 88 Ala. 37.

DOWDELL, J.—The defendant was tried and convicted on a charge of rape. Before entering on the trial he filed a motion for a change of venue. This motion was demurred to by the State, and after being several times amended and as often demurred to, the demurrer was sustained by the court. The facts as stated in the motion were insufficient to authorize a change of venue, and under the authority of *Jackson et al. v. State*, 104 Ala. 1, the court committed no error in sustaining the demurrer. In the case of *Jackson et al., supra,* the application for a change of venue was refused by the court after a hearing, upon a statement of facts supported by affidavits much stronger than those stated in defendant's motion in the case at bar.

The act of February 18th, 1887, entitled "An act to more effectually secure competent and well qualified jurors in the several counties of this State," etc., was a general law, and those provisions in the act not brought forward and continued in the present Code of 1896, were by the act of codification repealed. Some of its provisions were, however, recodified in the present Code and form a part of chapter 166.—Cr. Code, 1896, p. 347. The provisions of this chapter, 166, relating to the selection, drawing and summoning of jurors are declared to be merely directory.—§ 4997.

The several motions made by the defendant to quash the special venire drawn for the trial of the case were properly overruled by the court. Section 4997 of the Crim. Code, as construed in *Bales' Case*, 63 Ala. 30, was a complete answer to the motion to quash. There is nothing in the record to show that the defendant was prejudiced by the manner of drawing the jury. Besides, since the decision in *Bales' Case*, the above section has been amended by the addition of the last clause in said section, which provides that "No objection can be taken to any *venire facias* for a petit jury, except for fraud in

[Thompson v. The State.]

drawing or summoning the jurors." It is not pretended in this case that there was any fraud either in the drawing or summoning of the jurors.

The motion to quash the indictment is answered by section 5269 of the Code. See also authorities cited under that section. There was no error in overruling this motion.

The statement made by the witness King on the morning after the alleged rape to one Mehan and Mehan's reply, while we think was without injury to the defendant, yet having been made in the absence of the defendant, was improperly admitted against defendant's objection. It is of that character of evidence that should not be received in the trial of causes. If this were the only error committed on the trial in the admission of evidence, we would be inclined under the provisions of section 4333 of the Criminal Code not to reverse; feeling satisfied that the evidence was innocuous to the defendant, and error one without injury.

The identification of the defendant as the guilty party was an important question in the case. The testimony of the witness Mehan as to what transpired at the house of Mrs. King the morning after the alleged rape should not have been received over defendant's objection. This testimony going to the identification of the defendant, being a conversation had between the witness and Mrs. King in the absence of the defendant, was hearsay and clearly illegal. The injury to the defendant in the admission of this evidence is too manifest and apparent to admit of question. The direct tendency of it was to identify the defendant as the guilty party, and as stated above this was an important inquiry in the case, and a disputed question.

The several written charges requested by the defendant and refused by the court numbered two, three and five, hypothesized facts not contained in the evidence and were therefore abstract, and for that reason, if no other, bad and were properly refused. There was no evidence that Callie King was laboring under any hallucination.

The 4th written charge requested was argumentative and properly refused. Charge No. 1 being the affirmative charge, needs no further comment than the statement, that there was a conflict in the evidence, and the affirmative charge is never to be given under these circumstances.

The charge given at the request of the State, while it might be characterized as argumentative, contained a correct statement of the law. The giving of a charge, though argumentative, which correctly states the law, is not reversible.

For the error pointed out in the admission of evidence, the judgment must be reversed and the cause remanded.

